# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

)
BETTY JEAN TURNER,                                    )
)
Plaintiff,                 )
)
v.                                     )        **Civil Action No. 07-1105 (RMU)**
)
MICHAEL CHERTOFF, Secretary,               )        **JURY TRIAL DEMANDED**
Department of Homeland Security,           )
)
Defendant.                 )
_____)

## AMENDED COMPLAINT

### Nature of the Case

1.      Plaintiff Betty Jean Turner is an African-American former employee of the

Office of Aids to Navigation ("OAN") and the Office of Information Technology ("OIT") of

the U.S. Coast Guard (the "Agency").  At all times relevant to this Amended Complaint, she

was employed at the Coast Guard Headquarters in Washington, D.C., most recently as a

temporary GS-11 Program Analyst.

2.      Between approximately July 2004 and the end of her employment with the

Coast Guard in September 2005, Plaintiff suffered repeated retaliation because she previously

had been engaged in protected activity under Title VII of the Civil Rights Act 1964, 42 U.S.C.

§ 2000e.  Among other things, Plaintiff's supervisors prevented her from obtaining a

permanent position with OIT because of her prior equal employment activity.

3.      Pursuing her case largely *pro se*, Plaintiff sought to defend herself against the

discriminatory conduct of her supervisors.  She soon became entangled in the labyrinth of an

administrative review process that allowed the Coast Guard to ignore the full scope of

Plaintiff's grievances.  Today, more than three and a half years after the first act of retaliation, Plaintiff still has not been granted a full review of her grievances.

4.      Plaintiff challenges Defendant's retaliatory denial of permanent employment, prevention of higher grade employment, demotion of duties, and abusive treatment.  She seeks declaratory relief, injunctive relief, monetary damages, and other relief for the harm she has suffered because of Defendant's retaliation.

### Jurisdiction and Venue

5.      Jurisdiction of this Court arises under 28 U.S.C. § 1331, 42 U.S.C. § 2000e-16(c), and 42 U.S.C. § 2000e-5.

6.      Pursuant to 42 U.S.C. § 2000e-5(f)(3), this Court is a proper venue as the unlawful employment practice took place in the District of Columbia.

7.      Plaintiff has met all jurisdictional prerequisites for bringing this action.

### Parties

8.      Plaintiff Betty Jean Turner is a former employee of the U.S. Coast Guard and a resident of the State of Maryland.

9.      Defendant Michael Chertoff is the Secretary of Homeland Security and in such position is responsible for all administrative and personnel decisions of the Department.

### Facts

**Coast Guard Employment from 1998 to 2003**

10.      The Plaintiff joined the Office of Aids to Navigation as a Program Analyst in April 1998.  She served in that position until April 2003, when her permanent employment was terminated for alleged poor performance.  Plaintiff's grade at that time was GS-11.

11.     In May 2003, the Plaintiff appealed her removal to the Merit Systems Protection Board ("MSPB"), alleging illegal retaliation for prior protected Title VII activity during the time period of 2000 to 2003.  Her prior activity began in 2000 when she brought a racial and gender discrimination claim based on harassment against her then-direct supervisor, Lieutenant Commander William Burns.  Plaintiff also implicated her second-level supervisor, Commander Curtis Dubay, alleging in part that Dubay tolerated racist comments by a subordinate.  Plaintiff later amended her prior complaint to include retaliation claims based in part on hostile conduct and poor performance appraisals by Burns and Dubay.

12.     On December 18, 2003, the parties settled the MSPB case.  Under the settlement, the Coast Guard was to purge Plaintiff's Official Personnel File ("OPF") of any reference to her removal and provide her with a one-year temporary position of GS-11 Program Analyst, among other things.

**Coast Guard Employment from 2004 to 2005**

13.     Plaintiff began her temporary employment as a GS-11 Program Analyst in the Office of Information Technology, Resource Management Division (CG-6R), on January 5, 2004.

14.     Plaintiff's responsibilities at CG-6R included coordinating the Concurrent Clearance Process.  In this capacity, Plaintiff coordinated the approvals of senior OIT staff to management policy amendments of the Department of Homeland Security ("DHS").  Shortly after her arrival, Plaintiff simplified the approval process by implementing an electronic tracking system for the clearances.

15.     Plaintiff's other substantive responsibilities included the tracking and monitoring of budget expenditures for travel, training, and procurement requests.  Plaintiff

was issued an OIT credit card and put in charge of purchasing supplies. Plaintiff also assisted

with the approval of travel requests by issuing travel expenditure documents ("TONOs") and

approving and arranging payment for training requests.  In connection with her budget and

procurement responsibility, Plaintiff regularly attended Resource Management (OIT) budget

meetings.

        16.     Plaintiff's direct supervisor during the first six months at OIT was Commander

Drew A. Rambo.  Commander Rambo was extremely satisfied with Plaintiff's performance.

On or about April 3, 2004, he rated Plaintiff's performance "Exceeds" and – because

"performance to date ha[d] been exceptional" –  "envision[ed] assigning [Plaintiff] additional

responsibilities."

        17.     In June 2004, Plaintiff received a cash performance award in the amount of

$600.

        18.     In or around July 2004, Commander Daniel Christovich replaced Commander

Rambo.  Around the same time, Commander Patrick Hannifin became Plaintiff's second-level

supervisor.  Hannifin retired from active duty shortly after becoming Plaintiff's second-level

supervisor, but remained Plaintiff's supervisor as a civilian employee (Hannifin was still

being evaluated by then Captain Dubay when he became Plaintiff's supervisor).

        19.     Upon information and belief, Commander Christovich and Mr. Hannifin knew

of Plaintiff's prior protected Title VII activity, or learned about it shortly after they joined

CG-6R.

        20.     Upon information and belief, (then) Commander Hannifin had worked closely

with Captain Dubay at the Coast Guard's Navigation Center in Alexandria, VA.  As noted

above, Captain (then Commander) Dubay was Plaintiff's former second-level supervisor at

the Office of Aids to Navigation, whom she had accused of racial discrimination and retaliation.

21.     Upon information and belief, Captain Dubay informed Hannifin of Plaintiff's prior protected activity, either during their time at the Navigation Center or later.  In or around May 2004, Plaintiff observed Captain Dubay speaking with Hannifin in a hallway of the Coast Guard Office building.  Captain Dubay did not greet Plaintiff until several minutes after first seeing Plaintiff, and only after Commander Hannifin had entered the hallway, as if he wanted Commander Hannifin to know who Plaintiff was.  Upon information and belief, Captain Dubay mentioned Ms. Turner's prior EEO activity during this conversation, if not before.

22.     At a meeting shortly after his arrival, Commander Christovich told Plaintiff that he played golf regularly with Captain Lancaster, the Coast Guard official who had ordered Plaintiff's removal from her position with the Office of Aids to Navigation after Captain Dubay and Commander Burns proposed it.

23.     Upon information and belief, Commander Christovich was made aware of Plaintiff's prior protected Title VII activity either from Captain Lancaster or from Mr. Hannifin or from both men.

24.     Shortly after Commander Christovich and Mr. Hannifin became Plaintiff's supervisors, an ongoing pattern of unlawful retaliation emerged, including the incidences alleged below.

*References to Earlier Removal in OPF*

25.     On August 9, 2004, Plaintiff found references to her earlier removal from the Coast Guard in her Official Personnel File, in clear violation of the December 18, 2003

settlement agreement.  As explained below, she sought redress with the MSPB, but her petition ultimately was denied.

*Demotion of Duties*

26.     Shortly after their arrival, Commander Christovich and Mr. Hannifin gradually reduced Plaintiff's responsibilities and increasingly assigned menial tasks to her, despite Commander Rambo's strong recommendation to *increase* Plaintiff's responsibilities.

27.     As noted in paragraph 15, Plaintiff's budget responsibilities at CG-6R initially included approvals of travel requests/TONOs and training requests.  Without warning or explanation, Commander Christovich stripped Plaintiff of these responsibilities.  Plaintiff was left with purchasing office supplies and equipment – a "supply girl"-role substantially below her level of experience.  She was no longer invited to budget meetings on a regular basis.

28.     As noted in paragraph 14, Plaintiff's responsibilities also included the Concurrent Clearance Process.  In or around January 2005, again without warning or explanation and in spite of Plaintiff having been commended by her previous supervisor for her handling of concurrent clearances, Commander Christovich re-assigned this task to a much younger, less experienced colleague.

29.     The re-assignment was so unusual that one of Plaintiff's colleagues asked Plaintiff why she was leaving CG-6R when that colleague learned of the re-assignment.

30.     Upon information and belief, this pattern of behavior was motivated by knowledge of Plaintiff's prior protected activity.

*Hostile and Abusive Treatment*

31.    In addition to assigning menial tasks to Plaintiff, her supervisors treated Plaintiff in a hostile and abusive manner, and failed to intervene when other employees subjected her to hostile treatment.

32.    On various occasions, Commander Christovich called Plaintiff into his office to criticize her work product in an unduly harsh and offending manner.

33.    One of Plaintiff's first assignments was to generate a list of duties of the Coast Guard employees in CG-6R.  Plaintiff performed this task, but was subsequently chided for trying to ensure that the list was up-to-date by asking her colleagues to provide current descriptions of their duties.

34.    At a later point, Commander Christovich harshly criticized Plaintiff for continuing a long-standing practice of copying Rear Admiral Ronald T. Hewitt, the head of the OIT, on concurrent clearance e-mails.

35.    In or around late January 2005, Commander Christovich required Plaintiff to supply a daily work report, a typical element of Performance Improvement Plans.  In fact, Plaintiff had been required to supply daily work reports in 2003 when she suffered discrimination and retaliation under Burns and Dubay.  She believes Christovich continued the same methods of retaliation that she suffered under her previous supervisors, since no other employee in the office was required to provide such reports.

36.    In or around February 2005, Commander Christovich charged Plaintiff with reconciling two departmental accounts – a complex process that requires technical training for proficiency.  Instead of allowing Plaintiff time to become familiar with the reconciliation software, another employee in CG-6R, Mr. William Middleton, quizzed Plaintiff on the

program before she had attended formal training, and criticized her because she had not begun reconciling the accounts.  Mr. Middleton later routinely criticized Plaintiff for her budget reconciliation work.  Upon information and belief, Commander Christovich encouraged Mr. Middleton's abusive conduct.

37.    Upon information and belief, Commander Christovich engaged in the conduct described in paragraphs 31-36 because he disapproved of Plaintiff's prior Title VII activity, not because of her objective performance.  In fact, in April 2005, Commander Christovich rated Plaintiff's overall performance at the "Exceeds" level, after Plaintiff had become concerned and asked Christovich how to ensure that her performance remained at that level.

38.    Mr. Hannifin also treated Plaintiff with disrespect and upon information and belief condoned Commander Christovich's treatment of the Plaintiff.

*Prevention from Permanent and/or Higher Grade Position*

39.    Knowing that she had engaged in prior protected Title VII activity, Plaintiff's supervisors took several steps that ultimately barred Plaintiff from obtaining a permanent and/or higher grade position with the OIT.

40.    Under the 2003 MSPB settlement agreement, Plaintiff's temporary position with the OIT was originally set to expire in January 2005.  Plaintiff's appointment was twice extended, once in December 2004 (until April 30, 2005), and once in April 2005 (until September 30, 2005).  Upon information and belief, both extensions were requested by Rr. Admiral Hewitt because he had observed and appreciated Plaintiff's work and wanted to convert the Plaintiff to permanent status.

41.     In or around January 2005, Rr. Admiral Hewitt informed Plaintiff that she deserved a permanent OIT position, and upon information and belief asked Mr. Hannifin to provide Plaintiff with permanent employment.

42.     Upon information and belief, Mr. Hannifin could have reassigned Plaintiff to a permanent GS-11 Program Analyst position, or otherwise converted Plaintiff's status to permanent, to fulfill Rr. Admiral Hewitt's request.  Upon information and belief, OIT's budget would have allowed for several permanent Program Analyst positions.

43.     However, upon information and belief, Mr. Hannifin worked to prevent Plaintiff from obtaining permanent employment.

44.     In or around late March or early April 2005, Plaintiff requested a meeting with Rr. Admiral Hewitt to discuss obtaining her permanent position with OIT.  Upon information and belief, the Rr. Admiral met with Mr. Hannifin prior to the meeting.  The two men then jointly came to Plaintiff's work space to discuss the matter.

45.     To Plaintiff's great surprise, instead of discussing permanent employment, the Rr. Admiral asked Plaintiff whether she had a case pending before the MSPB.  Not wanting to lie, Plaintiff affirmed.  The Rr. Admiral then told Plaintiff that she should try to obtain permanent employment through the MSPB action, not through his assistance.

46.     Upon information and belief, Mr. Hannifin had informed Rr. Admiral Hewitt of Plaintiff's then-pending MSPB settlement agreement enforcement proceeding prior to the meeting, continuing his retaliation against the Plaintiff.  Upon information and belief, Mr. Hannifin's intervention caused the Rr. Admiral to reverse his course.

47.     Adding to Plaintiff's injury, in or around May 2005, Mr. Hannifin listed a permanent Program Analyst position in CG-6R at the GS-13 level, two levels above Plaintiff's GS-11 level.

48.     Plaintiff had the substantive skills required for the new position and more than five years of experience at the GS-11 level.  She would have been a highly competitive applicant.  However, Plaintiff could not apply for the newly created position because upon information and belief, it required prior service at the GS-12 level, which Plaintiff did not have.

49.     Upon information and belief, Mr. Hannifin could have announced the new position at the GS-12/13 level, which would have made plaintiff eligible, or alternatively could have created another GS-12 Program Analyst position.  He did not do so because he disapproved of Plaintiff's prior Title VII activity.

**Effect of Retaliation**

50.     The Plaintiff was unemployed from October 1, 2005, when her temporary employment with the Coast Guard terminated, through the beginning of April 2006.

51.     Plaintiff's subsequent efforts to find another position were unsuccessful until about April 6, 2006, when she found employment with SSI Business Solutions ("SSI"), a temporary employment agency.  SSI assigned Plaintiff to the Department of Health and Human Services ("DHHS") as a temporary Program Analyst (Contractor).

52.     On or about July 6, 2006, Plaintiff's temporary position terminated.  Plaintiff found new employment with NuAxis, LLC in March 2007.  She currently serves as a NuAxis contractor with the National Park Service.

53.     Plaintiff's combined salary and benefits during her time of employment with SSI and NuAxis have been significantly below that of a GS-11 federal employee.

54.     In the absence of retaliation, Plaintiff would have accumulated more than ten years of uninterrupted federal employment since April 1998, in addition to her prior service as a federal employee with the Department of Education and the Department of the Navy. Overall, Plaintiff would have accumulated significantly more than 15 years of federal government service.

55.     In the absence of retaliation, Plaintiff's federal employment level would be at least GS-12, and most likely GS-13.

56.     The retaliation and subsequent unemployment caused Plaintiff to develop severe symptoms of stress, including high blood pressure.

<u>**Procedural History**</u>

57.     The procedural history of Plaintiff's case is complex and vividly illustrates the many obstacles to obtaining relief *pro se* in Title VII cases under the Coast Guard's procedures.

**SF-50 Proceeding**

58.     On September 1, 2004, Plaintiff filed an MSPB petition alleging that the Coast Guard had violated the December 2003 settlement by failing to remove evidence of her prior termination from her OPF (hereafter, the "SF-50 proceeding"). An Administrative Judge interpreted her petition as one for enforcement of the settlement.

59.     Beginning in August 2004 and continuing through the fall of 2004, Plaintiff also discussed the failure to remove evidence of her prior termination from her personnel file with the Equal Employment Office ("EEO") of the Coast Guard.

60.     Plaintiff completed a first EEO intake questionnaire on August 24, 2004, alleging violation of the settlement agreement and retaliation, and filed an informal Title VII complaint on September 14, 2004.  On October 5, 2004, the Coast Guard's EEO office notified Plaintiff that it lacked jurisdiction because the December 2003 settlement agreement established exclusive MSPB jurisdiction for settlement enforcement issues.

61.     In February 2005, the Administrative Judge ruled in Plaintiff's favor on her MSPB petition.  However, the full board reversed the AJ's recommendation on June 23, 2006, by a 2-1 vote.  Plaintiff did not pursue her appeal to the Federal Circuit, and the appeal was ultimately dismissed.

62.     Plaintiff disagrees with the outcome of the SF-50 proceeding and views the underlying conduct as part of a pattern of continuous and ongoing retaliation by the Agency for prior protected activity.  However, Plaintiff accepts that the MSPB has ruled on the narrow issue of whether the Agency failed to remove evidence of her prior termination from her OPF as required by the December 2003 settlement agreement, and does not challenge this conduct in this Action.[1]

**Retaliation Proceedings**

63.     In a time period overlapping substantially with the SF-50 proceeding, Plaintiff also sought administrative review of the retaliatory action by her supervisors (hereafter, the "retaliation proceedings").  In these proceedings, Plaintiff made it abundantly clear that her grievances went well beyond the failure to purge her OPF.

---

[1]     In January 2004, Plaintiff had filed an MSPB petition seeking to rescind the December 2003 settlement due to mutual mistake and possible fraud, among other claims.  The MSPB denied her petition on April 15, 2004, and an appeal to the Federal Circuit was unsuccessful.  This January 2004 case has no relevance for the present Complaint.

64.     On October 29, 2004, Plaintiff completed a second EEO intake questionnaire, alleging "reprisal and retaliation because of participation in EEO activity."

65.     On November 3, 2004, the EEO Counselor conducted an initial interview with the Plaintiff.

66.     On March 8, 2005, having not heard from the Agency regarding her informal complaint, Plaintiff filed a formal complaint, again asserting retaliation.

67.     Plaintiff attached to the March 8, 2005 complaint a "Statement of Facts" noting the Agency's failure to make her permanent and alleging in part: (i) that her first supervisor at the OIT rated her performance "Exceeds"; (ii) that her direct and second-level supervisors changed in July 2004; (iii) that the new supervisors were "dear friend(s) of the two Captains from the previous Office (Aids to Navigation) whom the previous Discrimination/Retaliation Complaint was against"; (iv) that the two new supervisors "were … placed in this office … to continue with the CAPT's previous false claims of poor performance …"; (v) that she "noticed an attempt to keep me out of the budget matters for which I was hired … initially on Jan, 2004"; (vi) that she was given "menial tasks associated with ordering supplies"; and (vii) that she "began to see a trend of ridicule and complaints for very small matters from others in the office."

68.     On March 30, 2005, Plaintiff belatedly received a letter informing her she had the right to file a formal discrimination complaint. The EEO Director subsequently informed her that refiling her March 8, 2005 complaint would not be necessary.

69.     By letter dated November 17, 2005, more than one year after her informal complaint, Plaintiff finally received the EEO Counselor's report on her pre-complaint of discrimination.  The Counselor checked off boxes noting Plaintiff's alleged retaliation and

noted refusal to hire and denial of promotion as adverse actions.  Upon information and belief,

however, the only matter investigated was whether the Agency violated the December 2003

settlement by failing to purge Plaintiff's OPF.

70.    On December 5, 2005, Plaintiff re-filed her formal complaint noting that no

action had been taken on her March 8, 2005 submission.

71.    On March 20, 2006, more than one year after her first formal complaint,

Plaintiff filed a request for a hearing before an Equal Employment Opportunity Commission

("EEOC") Administrative Judge with the Coast Guard's EEO Office.  Plaintiff attached to the

request a copy of the March 8, 2005 Statement of Facts.  On March 29, 2006, the EEOC

accepted the request for a hearing.

72.    By letter dated April 11, 2006, the Agency accepted the following claim for

investigation:

> "Were you reprised against from January 2004 through August
> 2004 because of your prior EEO activity when you became aware
> on August 9, 2004 of an allegedly negative action in your [Coast
> Guard] official personnel folder [that] kept [you] from promotion
> and employment to [a] permanent position."[2]

73.    This statement of Plaintiff's claim entirely ignored Plaintiff's clear allegations

of retaliation by Commander Christovich and Mr. Hannifin.  Having re-submitted a copy of

the March 8, 2006 Statement of Facts only three weeks prior to the Agency's letter, Plaintiff

believed the Agency would investigate the full scope of her grievances.

74.    Not for the first time, Plaintiff was to be sorely disappointed.  On July 12,

2006, the Agency issued its report of investigation, which contained no reference to the

---

[2]    The April 11, 2006 letter noted that any request for correction to the claim as stated had to be submitted within five calendar days.  This was an unreasonably short period of time given the Agency's lack of responsiveness and diligence in investigating Plaintiff's claims.  As noted in paragraph 74, Plaintiff objected when she became aware of the Agency's failure to review the full scope of her grievances.

retaliation claims.  In a letter to the EEOC Administrative Judge dated September 25, 2006,

Plaintiff noted that she had received the report on September 19, 2006, and flagged the

Agency's failure to investigate the "retaliatory events" stated in the March 2005 complaint.

The Coast Guard's Office of General Law received a copy of the Sept. 25, 2006 letter.

75.     On October 12, 2006, the EEOC Administrative Judge dismissed Plaintiff's

case for lack of jurisdiction under mixed case rules, 29 C.F.R. § 1614.302.

**MSPB Retaliation Case**

76.     Untrained in negotiating highly technical procedural rules, and because her

retaliation claims still had not been addressed, Plaintiff brought an action to the MSPB on

December 13, 2006 (hereafter, the "MSPB retaliation case").

77.     In a March 2007 pleading, Agency counsel summarized Plaintiff's grievances

as follows:

> "The Appellant accuses the Agency of denying her job
> opportunities prior to the expiration of her term appointment in
> September 2005, of defaming her while she searched for
> employment elsewhere in the federal government, and of subjecting
> her to a hostile work environment based on her earlier filing of a
> discrimination complaint under 29 C.F.R. Part 1614.  If true, those
> allegations could constitute a pattern of unlawful discrimination and
> retaliation."

78.     Arguing that Plaintiff's claim of retaliation by her supervisors was outside the

MSPB's jurisdiction, the Agency moved to dismiss Plaintiff's complaint.  Agency counsel

noted that:

> "The Appellant filed a complaint with the Agency pursuant to 29
> C.F.R. § 1614.106 on March 8, 2005.  *She alluded to many of the*
> *alleged instances of discrimination and retaliation mentioned in her*
> *current appeal.*" (emphasis added)

79.     Based on this filing, it is abundantly clear that the Agency was on notice that Plaintiff's EEO complaint included retaliation claims beyond the failure to purge Plaintiff's OPF of evidence of her 2003 removal, and that the investigation arising from Plaintiff's complaint should have encompassed the facts alleged in this Action.  In fact, Agency counsel even claimed that "the Agency investigated those allegations and furnished the Appellant with a copy of the investigation report on July 12, 2006."  As noted in paragraph 74, however, the investigation report contains no reference to Plaintiff's retaliation grievances.

80.     The MSPB dismissed the retaliation case for lack of jurisdiction on April 13, 2007.

### Final Agency Decision in Retaliation Proceedings

81.     On March 19, 2007, the Agency issued its final decision in the EEO retaliation proceedings.  The final decision dismissed Plaintiff's complaint, again erroneously finding it had no jurisdiction under mixed case rules.

82.     Plaintiff timely filed her Complaint in this Action on July 19, 2007.

83.     On February 28, 2008, the Court granted the Plaintiff's motion to appoint counsel.

84.     On April 2, 2008, defendant agreed that Plaintiff could file this Amended Complaint, and the Court amended the briefing schedule to allow time to prepare it.

### Count One:  Retaliation – Denial of Permanent Employment

85.     Plaintiff incorporates herein by reference paragraphs 1-84 of this Amended Complaint.

86.     Plaintiff engaged in protected activity under Title VII of the Civil Rights Act by filing discrimination and retaliation complaints against her supervisors at the Office of Aids to Navigation between 2000 and 2003.

87.     Upon information and belief, Plaintiff's direct supervisors at the Office of Technology caused Rr. Admiral Hewitt to rescind a promise to provide Plaintiff with permanent employment at the Coast Guard.

88.     Plaintiff's direct supervisors also failed to reassign or otherwise convert Plaintiff to a permanent GS-11 position.  In addition, they listed the only permanent Program Analyst position in CG-6R at the GS-13 level – out of reach for the Plaintiff.

89.     Upon information and belief, Plaintiff's supervisors knew of Plaintiff's protected activity and engaged in adverse employment action because they disapproved of it.

90.     Plaintiff suffered loss of income, uninterrupted federal employee status, and stress as a result of her supervisor's denial of permanent employment.

91.     The nature of these actions could dissuade any reasonable employee from making or supporting a charge of discrimination under Title VII.

### Count Two:  Retaliation – Prevention of Higher Grade Employment

92.     Plaintiff incorporates herein by reference paragraphs 1-91 of this Amended Complaint.

93.     In addition to preventing Plaintiff's permanent employment, her supervisors failed to provide the Plaintiff with an opportunity to compete for higher grade employment.

94.     Plaintiff's supervisors listed a permanent Program Analyst position in CG-6R at the GS-13 level – out of reach for the Plaintiff.  Upon information and belief, the position

could have been listed at the GS-12/13 level and/or other GS-12 positions could have been made available at the time of Plaintiff's employment with the OIT or shortly thereafter.

95.     Plaintiff had the necessary experience for a GS-12 position, had received "Exceeds" ratings in 2004 and 2005, and would have been highly competitive.

96.     Plaintiff's supervisors prevented Plaintiff from competing for a GS-12 position because they disapproved of her prior protected activity.

97.     Such action could dissuade any reasonable employee from making or supporting a charge of discrimination under Title VII.

### Count Three: Retaliation – Demotion of Duties and Abusive Treatment

98.     Plaintiff incorporates herein by reference paragraphs 1-97 of this Amended Complaint.

99.     Plaintiff's supervisors Commander Christovich and Mr. Hannifin assigned Plaintiff increasingly menial tasks, stripping Plaintiff of many of her substantive responsibilities.  They engaged in this conduct despite Commander Rambo's recommendation to *increase* Plaintiff's responsibilities.

100.     Plaintiff's supervisors also subjected Plaintiff to hostile and abusive treatment and upon information and belief encouraged unfair criticism by other CG-6R employees.

101.     Plaintiff's supervisors engaged in the conduct described above because they disapproved of her prior Title VII activity.

102.     Such action could dissuade any reasonable employee from making or supporting a charge of discrimination under Title VII.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully respects that this Court enter judgment:

A.      Declaring that the acts and practices complained of herein are in violation of

42 U.S.C. § 2000e-16(a) (2006);

B.      Providing Plaintiff with a permanent position at the GS-12/13/14 level;

C.      Make whole Plaintiff for lost wages and benefits that would have been earned

from January 5, 2005 through the time of the court order;

D.      Directing Defendant to pay Plaintiff compensatory damages, including

damages for stress suffered as a result of retaliation, in an amount appropriate to the proof at

trial;

E.      Modifying Plaintiff's federal government employment record to show

continuous service from April 25, 2003 to the present;

F.      Providing Plaintiff with a 15 year federal government service pin;

G.      Awarding Plaintiff reasonable attorneys' fees and costs for this action;

H.      Granting such other and further legal and equitable relief as this Court deems

necessary and proper.

## Jury Demand

Plaintiff demands a trial by jury on all counts.

Respectfully submitted,

/s/ Hartmut Schneider
_____
William J. Kolasky (DC Bar # 217539)
Hartmut Schneider (DC Bar # 499258)
Michael O. Loatman (DC Bar # 500484)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6948
(202) 663-6363 fax

Dated:  April 30, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April, 2008, I caused the foregoing Plaintiff's Amended Complaint to be served by hand on the defendant, through his attorney, addressed as follows:

Alexander D. Shoaibi
Assistant United States Attorney
U.S. Attorney's Office
555 Fourth Street, NW
E-4218
Washington, DC 20530
(202) 514-7236

/s/ Hartmut Schneider

_____
Hartmut Schneider (DC Bar # 499258)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6948
(202) 663-6363 fax

- 20 -